Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4881 | **DATE** | 8/20/2002 |
| **CASE TITLE** | Frances A. Kopulos vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This Court grants the Claimant's motion for summary judgment [18-1], denies the Commissioner's motion for summary judgment [23-1] and remands the case to The Commissioner for further proceedings consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 26 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/20/2002 | |
| | | | date mailed notice | |
| DK | courtroom deputy's initials | | DK | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
AUG 2 2 2002

| | |
|---|---|
| FRANCES A. KOPULOS, | |
| Plaintiff, | |
| v. | Case No. 01 C 4881 |
| JO ANNE B. BARNHART, Commissioner of Social Security, | Magistrate Judge Morton Denlow |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frances A. Kopulos ("Claimant" or "Kopulos") seeks judicial review of the final decision of the Commissioner of Social Security, Jo Anne B. Barnhart ("Commissioner" or "Defendant"), denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405(g). This case has a long history and was previously remanded to the Commissioner by United States District Court Judge Wayne R. Andersen in 1999. Both parties move for summary judgment. For the reasons stated herein, this Court grants the Plaintiff's motion for summary judgment, denies the Commissioner's motion, and again remands the case to the Commissioner for further proceedings consistent with this opinion.

1



# I. RELEVANT FACTS

Claimant filed for DIB under Title II of the Social Security Disability Act on September 22, 1994, alleging a disability due to the symptoms of Multiple Sclerosis ("MS") since March 1, 1992. (R. 66-68). Her application was initially denied in November 1994. (R. 69-71). Upon reconsideration in March 1995, it was again denied.[1] (R. 78-81). Claimant has participated in two administrative hearings, the first on May 13, 1997 (R. 30-65) and the second on March 23, 2001. (R. 445-59).

## A. FIRST ADMINISTRATIVE HEARING

The first administrative hearing was held May 13, 1997, before Administrative Law Judge ("ALJ") Rodney G. Haworth. (R. 30-65). The Claimant, her husband, and her sister testified. The Claimant was represented by counsel. On May 30, 1997, ALJ Haworth denied Kopulos DIB because she did not have a severe impairment prior to December 1993, when her insured status for DIB expired. (R. 11-19). Thus, she failed at step two of the five step sequential analysis to determine whether a claimant with exertional impairments is disabled. 20 C.F.R. §404.1520. On May 7, 1998, the Appeals Council denied Claimant's request for review. (R. 6-7).

On July 6, 1998, Plaintiff filed a complaint requesting judicial review of the final determination. (R. 386-88). United States Magistrate Judge Ian H. Levin issued a report and

---

[1] While the request for hearing was pending, Plaintiff sent more documents to the Social Security Administration, which included a current diagnosis for major depression. (R. 179). On January 20, 1996, after receiving the current diagnosis for major depression, ALJ James A. Horn vacated the reconsideration determination of March 16, 1995. (R. 193).

2

recommendation that ALJ Haworth's decision be affirmed on every issue, except for the ALJ's failure to address the state agency physicians' expert opinions that Claimant had a severe impairment. (R. 392-405). United State District Court Judge Wayne R. Andersen adopted Judge Levin's report and recommendation and remanded the cause to the ALJ for consideration of the state agency physicians' findings as directed by SSR 96 - 6p. (R. 391). Judge Andersen's remand resulted in a second administrative hearing.

## B. SECOND ADMINISTRATIVE HEARING

The second administrative hearing was held on March 23, 2001, before ALJ Michael R. McGuire. (R. 445-59). Claimant and Vocational Expert Edward Pagella ("VE") testified. Claimant was represented by the same counsel.

### 1. Kopulos' Hearing Testimony

Claimant testified at both hearings. However, at the second hearing, she only testified about her past vocational work. (R. 450-54). Kopulos was born on August 14, 1956. (R. 34). She is married and has two children. (R. 35). Kopulos completed the eleventh grade of high school. (R. 34). She worked as a pharmacy clerk from 1974 until 1980. (R. 451). She worked in customer service from 1980 to 1988. (R. 451). Claimant last worked in 1988, when she worked in customer service for a printing company. (R. 36). She left her job for maternity leave in August 1988. (R. 36). While on leave, her employer closed. (R. 36).

In March 1992, Claimant noticed a change in her health. (R. 36) Her symptoms included severe fatigue and numbness in her hands, legs, and feet. (R. 36, 88). She had

problems with her balance and muscular control. (R. 88). She was easily upset and had difficulty remembering information, such as her husband's work telephone number. (R. 36, 52). She complained of insomnia and frequent urination and leakage problems. (R. 43). Kopulos also took medication for depression. (R. 49).

### 2. VE's Hearing Testimony

The ALJ presented four hypotheticals to VE Edward Pagella at the second hearing. The first hypothetical was based on Ex. 5 (R. 78-80), which assumed an individual with Claimant's age, education, and vocational background, as well as characteristics of the Claimant's RFC, an individual who could "lift 20 pounds maximum and who could sit, stand, or walk through a six hour day, but who's limited in pushing and pulling with upper and lower extremities, who could only engage in climbing and crawling occasionally, and who would need to avoid extreme cold, heat, humidity, fumes, and hazards." (R. 455). Based on this hypothetical, the Claimant could perform her past relevant work in customer service or as a pharmacy clerk. (R. 455).

The ALJ's second hypothetical was identical to the first, except the individual was limited to simple and unskilled tasks. (R. 455). Based on this hypothetical, an individual could perform a variety of occupations, including 48,000 cashier positions, 11,600 general office clerk positions, and 22,000 assembly worker positions. (R. 455).

The ALJ continued the same characteristics in the third hypothetical, but also added the characteristic of generalized fatigue, requiring the individual to take unscheduled breaks

for rest. The VE stated that such a hypothetical individual would not be able to perform substantial gainful activity. (R. 456).

In the final hypothetical, the ALJ maintained all the same characteristics of the third, but replaced general fatigue with the need to have hourly bathroom breaks. The VE responded that this individual would not be able to perform substantial gainful activity. (R. 456).

## C. MEDICAL EVIDENCE

### 1. MacNeal Hospital

On June 3, 1992, Claimant reported to MacNeal Hospital complaining of numbness to the left side of her face, left leg and left arm. (R. 124). She was diagnosed as having atypical migraine headaches. (R.125-26). MS or a seizure disorder were also identified as possible, but unlikely diagnoses. (R. 125-26, 129). On June 5, 1992, Kopulos had a Magnetic Resonance Imaging ("MRI") of her left brain. (R. 120). The results showed areas of increased signal to the cerebral white matter, which "may be secondary to multiple sclerosis plaques." (R. 120). The results also showed no accompanying neurologic deficit, which implied the plaques were not necessarily caused by MS. (R. 118, 125).

### 2. Treating Neurologist Physicians: Dr. Timothy McGonagle and Dr. Susan Nadis

On July 2, 1992, Claimant complained of occasional numbness in her left side with pain. (R. 118). Dr. Susan Nadis, a neurologist, found no clinical signs of a neurological deficit attributable to a demyelinating disease. (R. 153).

On September 23, 1992, Plaintiff saw Dr. Nadis' associate, Dr. Timothy McGonagle, also a neurologist, who noted a slight limp and clumsiness in Claimant's hands. (R. 152). Her symptoms, with the known abnormal MRI scan, raised the possibility of MS. (R. 152). He found Claimant had no neurological deficits, except for a diminished vibratory sense at T-12 - L1 along the vertebral spines. (R. 152). Claimant was normal in her gait, strength in lower extremities, upper extremity findings, and reflexes. (R. 152). However, she also complained of an increased urgency and frequency to urinate. (R. 152).

On December 21, 1993, Claimant visited Dr. McGonagle complaining of aches and pains in all extremities and general fatigue and malaise. (R. 151). He diagnosed a shoulder strain or sprain. (R. 151). He opined that Claimant's symptoms might be related to depression. (R. 151). Dr. McGonagle recommended a second MRI (R. 151), which was performed on January 4, 1994. (R. 121). The radiologist determined that the white matter changes in the brain were consistent with a demyelinating process. (R. 120).

In May 1994, Claimant underwent tubal ligation surgery. (R. 144-45). In July 1994, Claimant saw Dr. McGonagle on a routine return visit. (R. 147). Although her examination failed to reveal any major objective abnormality, Dr. McGonagle concluded she was probably suffering from MS "based on the symptom complex and progressive changes on the MRI scan without other potential etiologies being found." (R. 147).

In January 1995, Dr. McGonagle determined Claimant's new symptoms of mild swelling and limitation on alternating rapid movement for upper right extremity, might be

6

a mild exacerbation of MS. (R. 180). He could not find much in the way of objective abnormalities. (R. 180).

### 3. State Agency Physicians

On October 26, 1994, Dr. Julius Villaflor conducted a Residual Functioning Capacity ("RFC") Assessment of Claimant's record. (R. 154-161). He concluded that as of the Claimant's date last insured, December, 31, 1993, Claimant was capable of performing sedentary jobs. (R. 161). Dr. Harry Bergmann affirmed Dr. Villaflor's findings on February 27, 1995. (R. 154).

### 4. Dr. Catherine Camilleri

Claimant was referred by her neurologist Dr. Nadis to see Dr. Catherine Camilleri, a psychiatrist, in August 1995. (R. 179). Dr. Camilleri diagnosed her symptoms consistent with major depression and prescribed Prozac. (R. 179). Dr. Camilleri also completed a psychiatric report on the Claimant for the Social Security Administration ("SSA") dated May 1, 1996. (R. 224-26). As of that date, Dr. Camilleri had seen Claimant five times. (R. 224). She diagnosed Claimant as suffering from major depression, but noted Claimant has the ability to do work related activities such as carrying out instructions, responding appropriately to supervision, co-workers and customary work pressures. (R. 226). On May 11, 1996, Dr. Camilleri completed a Mental RFC and stated Kopulos does have "the mental capacity to perform simple tasks." (R. 240).

## D. THE ALJ'S DECISION

On April 24, 2001, ALJ Michael R. McGuire denied Kopulos' claim for social security disability benefits. (R. 375-84). ALJ McGuire did not take testimony from Claimant regarding her pre-December 1993 medical status, but relied on the earlier hearing transcript before ALJ Haworth. (R. 380). Unlike ALJ Haworth, who found Kopulos did not have a severe impairment at step two, ALJ McGuire did find a severe impairment. (R. 383). The ALJ concluded Claimant has the "residual functional capacity for light exertional work with postural and environmental restrictions in reaching and bending that does not involve more than simple, unskilled tasks." (R. 383). The ALJ found Kopulos not disabled at step five because she could perform significant light exertional work limited to simple and unskilled tasks at a substantial gainful activity level. (R. 380-84).

Before this Court are Kopulos' and the Commissioner's cross-motions for summary judgment. Oral argument was held on July 29, 2002.

## II. LEGAL STANDARDS

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405 (g) which provides the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, the ALJ's findings must be supported by more than a mere scintilla of the evidence. *Id.*

A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). Rather, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching its decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. § 405(g); *Scivally v. Sullivan*, 996 F.2d 1070, 1075 (7th Cir. 1992). The SSA gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for hearing." 42 U.S.C. § 405(g).

In order to be entitled to DIB under Title II of the SSA the claimant must establish a "disability" as defined by the Social Security Act. The same is true to qualify for SSI under Title XVI of the SSA. *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 1997). To establish a "disability" the claimant must show he is suffering from a medically determinable physical or mental impairment which can be expected to result in death or, which has lasted or can be expected to last for at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Additionally, an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Regulations provide a five-step process to determine whether a claimant has established a "disability." 20 C.F.R. § 404.1520. The process is sequential; if

the ALJ finds that the claimant is not disabled at any step in the process, the analysis ends. *Id.* The ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; (5) whether the claimant is capable of performing any work in the national economy. *Id.*

### III. ANALYSIS

The issues presented are: (1) whether the ALJ properly assessed Kopulos' credibility; and (2) whether the Claimant's severe impairment qualifies as a slowly progressive impairment under Social Security Ruling ("SSR") 83-20.

### A. THE ALJ ERRED IN ASSESSING KOPULOS' CREDIBILITY WITHOUT HEARING HER TESTIFY ON THE SUPPOSED INCONSISTENCIES

The Claimant's first argument is the second ALJ should have taken testimony from Claimant rather than relying on the first ALJ's hearing transcript and credibility determination. This Court agrees because the first hearing involved a determination at step two, whereas on remand the second ALJ decided the case at step five. Based on the VE's testimony, the decisive issue in the case was whether Claimant required hourly bathroom breaks or unscheduled breaks due to fatigue. As a result, Claimant's credibility and description of symptoms in relationship to the objective medical evidence are crucial to the ultimate decision.

The ALJ found the Claimant's "allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." R. 383. The ALJ found "that the Claimant was exaggerating the severity of her medical status in her testimony before Administrative Law Judge Haworth." R. 383. This Court does not comprehend how a credibility determination can be made without the ALJ hearing from the Claimant on the issues for which credibility is being judged.

This case was not remanded to the original ALJ because he was retired. Having the first judge retire is an unusual circumstance. A similar situation requiring the Plaintiff to re-testify occurred in an employment race discrimination case on an appeal from an involuntary dismissal. *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1285 (7th Cir. 1977). At the time of the remand, the original judge had died and the *Flowers* court held:

> because of the death of Judge Lynch since trial and because of the possibility that the *plaintiff's credibility* as a witness may be challenged by the defendant on remand, we believe a full retrial is appropriate here to afford the new trial judge an opportunity to hear the plaintiff testify. Accordingly, the case is remanded for a new trial."

*Id.* (emphasis added).

Second, ALJ McGuire notes the Claimant's earlier written statements were also inconsistent with her testimony before ALJ Haworth, however, she was never given an opportunity to explain any of the perceived discrepancies. R. 380-382. Because the second ALJ disagreed with the first ALJ at step two, it was unfair not to give the Claimant an opportunity to address the ALJ's legitimate concerns about possible discrepancies. SSR 96-

7p. Therefore, on remand the ALJ should have the Claimant testify and make independent credibility findings. In this context, the ALJ should decide whether Claimant's claim that she requires unscheduled breaks due to fatigue or hourly bathroom breaks are credible in light of the medical evidence.

## B.   THE NATURE OF CLAIMANT'S SEVERE IMPAIRMENT MAY QUALIFY FOR SSR 83-20

Social Security Ruling 83-20 discusses the onset of slowly progressive impairments. The medical definition of MS describes it as a "slowly progressive CNS (Central Nervous System) disease characterized by disseminated patches of demyelination in the brain and spinal cord, resulting in multiple and varied neurologic symptoms and signs, usually with remission and exacerbations." The Merck Manual of Diagnosis and Therapy, 16th ed. p. 1488-89 (1992). On remand, ALJ McGuire must determine if Claimant's severe disorder qualifies for SSR 83-20. If the impairment is determined to be a slowly progressive impairment, then "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomalogy of the disease process." SSR 83-20. Such an undertaking may require the ALJ to request a Medical Expert's testimony, further independent medical examination, or further information from Claimant's treating physician.

## IV. CONCLUSION

The ALJ erred in making a credibility finding regarding case dispositive issues without hearing from the Claimant and relying on the transcript from an earlier hearing. For the reasons stated in this opinion, **this Court grants the Claimant's motion for summary judgment, denies the Commissioner's motion for summary judgment and remands the case to the Commissioner for further proceedings consistent with this opinion.**

**SO ORDERED THIS 20th DAY OF AUGUST, 2002.**

_____
**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to:**

Frederick J. Daley, Jr.
Daley, DeBofsky & Bryant
One North LaSalle Street, Suite 3800
Chicago, Illinois 60602
(312) 372-5200
(312) 372-2778 (fax)

Attorney for Plaintiff

Kathryn A. Kelly
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, IL 60604
(312) 353-1936

Curt P. Marceille
Assistant Regional Counsel
200 W. Adams St.- 30th Floor
Chicago, Illinois 60606
(312) 353-9217

Attorneys for Defendant